UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
DR. GERARD R. FINKEL, as Chairman of
the Joint Industry Board of the Electrical
Industry,

                            Petitioner,

            -against-

KS&SS ASSOCIATES, INC.,

                        Respondent.
-----------------------------------------------------------X

                                **REPORT AND
RECOMMENDATION**
                                23-CV-2484 (HG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      On March 31, 2023, Petitioner, Dr. Gerald R. Finkel, as Chairman of the Joint

Industry Board of the Electrical Industry, filed a Petition to confirm and enforce an

arbitration award (the "Award") entered against Respondent, KS&SS Associates, Inc. on

March 14, 2023. (Pet. to Confirm Arb. Award ("Pet."), ECF No. 1.) The arbitrator issued

the Award upon finding that Respondent violated the collective bargaining agreement

("CBA") between Local Union No. 3 of the International Brotherhood of Electrical

Workers, AFL-CIO (the "Union") and Respondent. Respondent has neither responded

to this action nor otherwise sought to challenge the Award. For the following reasons,

the Court respectfully recommends that the petition and request for attorney's fees and

costs be granted.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**I.   The Plans**

      Petitioner is the Chairman of the Joint Industry Board of the Electrical Industry

(the "JIB"), which serves as the administrator of various employee benefit plans

established and maintained pursuant to the CBA.[1] (Pet., ECF No. 1, ¶ 4.) The JIB is the administrator and fiduciary within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(16)(A)(i) and 1002(21)(A), of numerous employee benefit plans (collectively referred to as the "ERISA Plans"). (*Id.* ¶ 5.) Each of the ERISA Plans is an employee benefit plan and a multi-employer plan under ERISA. (*Id.* ¶ 7.) *See* 29 U.S.C. § 1002(3), (37). Each ERISA Plan is jointly administered by a board of trustees comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). (Pet., ECF No. 1, ¶ 7.)

Under the CBA, each employer is required to submit a weekly remittance to the JIB that includes contributions to each of the ERISA Plans (except for the Deferred Salary Plan (the "DSP"))[2] and an assessment collected from each employed Union member. (*Id.* ¶ 6.) For the DSP, employers are required to deduct a specified percentage from the weekly wages of covered employees and to remit that amount plus any additional salary deferrals the employee has elected ("Employee Contributions") to the DSP. (*Id.* ¶ 8.) Employers must also remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"); collectively, the Employee and Employer Contributions constitute the "DSP Contributions." (*Id.* ¶¶ 8–11.) The JIB may

---

[1] The facts are taken from the Petition and exhibits and are presumed true since no response has been filed. *See, e.g., Finkel v. JCF Elec., Inc.*, No. 21-CV-3161 (CBA) (RER), 2022 WL 3682834, at *1 (E.D.N.Y. Aug. 25, 2022); *Finkel v. Thorn Elec., Inc.*, No. 22-CV-93 (EK) (TAM), 2022 WL 18135310, at *1 (E.D.N.Y. Dec. 2, 2022), *report and recommendation adopted*, 2023 WL 112802 (E.D.N.Y. Jan. 5, 2023).

[2] One of the ERISA Plans, the Deferred Salary Plan of the Electrical Industry (the "DSP"), is a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of 401(k) of the Internal Revenue Code. (Pet., ECF No. 1, ¶ 8.)

also collect employee loan payments and funds to support the operations of the Board (collectively referred to as "Non-ERISA Plan Contributions"). (*Id.* ¶¶ 9–10.) Employer contributions to each of the ERISA Plans (except the DSP), the Union assessment remittances, and the Non-ERISA Plan Contributions are collectively referred to as the "JIB Contributions." (*Id.* ¶ 12.)

The JIB Contributions, together with the DSP Contributions, are the "Required Contributions." (*Id.*) Respondent is a corporation organized under the laws of the State of New York and maintains its principal place of business at 6 Hurd Avenue, Gamerville, NY 10923. (*Id.* ¶ 13.) Respondent, at all relevant times, was an "employer" under ERISA and the LMRA. (*Id.*) *See* 29 U.S.C. §§ 142(3), 1002(5).

## II. The Collective Bargaining Agreement

As a member of the Association of Electrical Contractors, Inc. (the "Association"), Respondent agreed to be bound by the CBA for the period of April 26, 2017, through April 22, 2020. (*Id.* ¶ 17; *see* CBA, ECF No. 1-2.) The Association and the Union amended the CBA on April 9, 2020, to extend its term through and including April 21, 2021. (Pet., ECF No. 1, ¶ 18; *see* CBA Amend. Agreement, ECF No. 1-3.) The CBA requires notification to terminate the agreement, which was not given, causing the CBA to remain in effect through April 19, 2023. (Pet., ECF No. 1, ¶¶ 19–21.) Under the CBA, Respondent was obligated to make Required Contributions to the ERISA Plans, the Non-ERISA Plans, and to the Union "for all work within the trade and geographical jurisdiction of the Union and to submit weekly payroll reports that provide the name, gross wages, and hours worked for each worker employed by the company on whose behalf Required Contributions are made." (Pet., ECF No. 1, ¶ 22; CBA, ECF No. 1-2, Art. XII § 12.06, Art. XIV § 14.01, Art. XV § 15.01, Art. XVII § 17.01, Art. XVIII § 18.01, Art. XX

§ 20.01, Art. XXII § 22.01, Art. XXIII § 23.01, and Art. XXVII.) In addition, under the CBA, the parties agreed to be bound by the provisions of the plan and trust documents, "including but not limited to, the delinquency and collection procedures of the Plan and the requirements of ERISA." (Pet., ECF No. 1, ¶ 23; CBA, ECF No. 1-2, Art. XV § 15.02.) The CBA further provided that an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages of 20%, in the event of entry of judgment against the Employer in an action to collect delinquent contributions." (Pet., ECF No. 1, ¶ 24; CBA, ECF No. 1-2, Art. XV, § 15.02.)

The JIB's policy for the collection of delinquent contributions ("Collection Policy"), provides that (1) if "an employer fails to remit Contributions and has not submitted payroll reports for such unpaid Contributions, the [JIB] may use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer"; (2) the interest rate for delinquent contributions is to be calculated at the rate set forth in Section 6621 of the Internal Revenue Code for all ERISA Plans; and (3) an employer shall be liable for liquidated damages and attorney's fees and costs if legal action is commenced. (Collection Policy, ECF No. 1-4, Art. II.E §§ 1–2, Art. II.F § 1.) The JIB also established arbitration procedures, which provide that the arbitrator shall have the authority to resolve any disputes between the JIB and an Employer "related to the Employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs," and that if the arbitrator finds in whole or in part for the JIB, the employer shall be liable for the arbitrator's fees, attorney's fees, and costs. (Arbitration Procedures, ECF No. 1-5, §§ I.K, II, and X.B.)

4

### III. The Arbitration and Award

Petitioner claims that Respondent failed to remit certain Required Contributions for the payroll weeks ending September 21, 2022, and December 7, 2022, through and including December 28, 2022.[3] (DeLuca Decl., ECF No. 17, ¶ 29; *see* Mem. of Law in Supp. of Arb., ECF No. 17-7, ¶ 45.) Accordingly, on February 3, 2023, pursuant to the Collection Policy and Arbitration Procedures, Petitioner initiated arbitration before the designated arbitrator, Stephen F. O'Beirne, Esq., and sent a notice of intent to arbitrate and statement of claims to Respondent by electronic mail. (Pet., ECF No. 1, ¶ 33; Statement of Claims, ECF No. 1-6.) Subsequently, on March 9, 2023, Petitioner sent a memorandum of law to Respondent by electronic mail. (Pet., ECF No. 1, ¶ 34; Pre-Hearing Mem. of Law, ECF No. 1-7.)

On March 14, 2023, the arbitrator found that Respondent was in violation of the CBA and ordered Respondent to pay Petitioner the sum of $182,793.18,[4] consisting of: (1) JIB Contributions of $109,965.29; (2) interest thereon of $6,175.45; (3) DSP contributions of $30,028.86; (4) interest thereon of $3,330.26; (5) additional interest of $3,044.49; (6) liquidated damages of $27,988.83; and (7) legal, administrative and

---

[3] Specifically, Plaintiff avers that "Respondent failed to report and remit: (1) JIB Contributions owed for payroll weeks ending September 21, 2022, and December 7, 2022 through and including December 28, 2022; and (2) DSP Contributions owed for payroll weeks ending December 7, 2022 through and including December 28, 2022." (DeLuca Decl., ECF No. 17, ¶ 29.)

[4] The Court notes that the arbitrator's math does not add up. ($109,965.29 + $6,175.45 + $30,028.86 + $3,330.26 + $3,044.49 + $27,988.83 + $2,250.00 = $182,783.18.) Although courts are to give an arbitration award deference, the Court is of course permitted to "properly calculate" items in the record. *See, e.g., Fisher v. SD Prot. Inc.*, 948 F.3d 593, 601 (2d Cir. 2020) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

arbitration fees of $2,250.00.[5] (Award, ECF No. 1-9, at 5.) The arbitrator also found that Respondent is "responsible for any costs, including reasonable attorney's fees, incurred by the JIB in enforcing [the Award]." (*Id.* at 6.) Respondent has not abided by the Award. (Pet., ECF No. 1, ¶ 39.) The Award has not been vacated or modified, and Respondent has not applied for such relief. (*Id.* ¶¶ 40–41.) Petitioner now seeks confirmation of the Award, as provided for under the CBA and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

## IV. Procedural History

Petitioner timely filed the Summons and Petition to Confirm Arbitration Award on March 31, 2023.[6] Petitioner asks the Court to (1) confirm the award; (2) award judgment in favor of Petitioner in the amount of $182,793.18, plus interest from the date of the Award through the date of judgment; and (3) award $9,896.04 in attorney's fees and costs. (Pet., ECF No. 1, at 10; Suppl. Letter, ECF No. 25.) Respondent was served with the Petition on April 6, 2023, and Respondent's Answer was due by April 27, 2023. (Cert. of Serv., ECF No. 9.) *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Petitioner filed proof of service with the Court on April 12, 2023. (Summons, ECF No. 10.) On April 28, 2023, Petitioner filed a request for a certificate of default. (Request for Cert. of Default, ECF No. 12.) On May 3, 2023, the Clerk of Court issued a Certificate of Default certifying that

---

[5] The Award states that attorney's fees and costs incurred in the arbitration amount to "three thousand six hundred fifty dollars ($2,250.00)." (Award, ECF No. 1-9, at 5.) Petitioner clarified this discrepancy, confirming that the correct amount is $2,250. (Suppl. Letter, ECF No. 25, at 2.)

[6] The Court notes that this was well within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award. *See, e.g., Photopaint Techs., LLC v. Smartlens Corp.,* 335 F.3d 152, 158 (2d Cir. 2003) ("[S]ection 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA.").

Respondent had been properly served and no answer had been filed (Entry of Default, ECF No. 14.) On May 3, 2023, the Honorable Hector Gonzalez issued an order directing Petitioner to file a motion for default judgment by June 5, 2023. (May 3, 2023 ECF Scheduling Order.) Judge Gonzalez thereafter referred the Petition to the undersigned magistrate judge for a report and recommendation. (June 12, 2023 ECF Order Referring Motion.)

On September 11, 2023, the Court scheduled a hearing on the default motion for October 31, 2023, at 11:30 a.m., and mailed a Notice to Respondent. (Scheduling Order, ECF No. 21.) On October 31, 2023, the Court held the hearing. (Oct. 31, 2023 ECF Minute Entry and Order.) Counsel for Plaintiff appeared; Defendant did not. (*Id.*) The Court directed Plaintiff to "file receipts for costs associated with this case" and "[took] Plaintiff's Motion for Default Judgment under advisement." (*Id.*) On November 3, 2023, Plaintiff filed an affidavit in support of the motion, and on December 12, 2023, Plaintiff filed a letter "clarifying attorneys' fees sought in support of Petitioner's motion for default judgment." (Suppl. Grancio Decl., ECF No. 22; Fees Letter, ECF No. 25.) To date, there has been no response to the Petition or the motion.

## DISCUSSION

### I. Legal Standards

#### A. Arbitration Awards

Arbitration awards are not self-enforcing and "must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir.

2006)[7]; *see also Trs. of the Bldg. Trades Annuity Fund, Educ. Fund, Welfare Fund & N.Y. Elec. Grp., Inc.*, No. 11-CV-3801 (ADS) (ETB), 2012 WL 4328632, at *2 (E.D.N.Y. Mar. 21, 2012), *report and recommendation adopted*, 2012 WL 4328583 (E.D.N.Y. Sept. 19, 2012). The Second Circuit has instructed district courts that unopposed petitions to confirm arbitration awards should be construed as unopposed motions for summary judgment. *D.H. Blair & Co.*, 462 F.3d at 110; *see Finkel v. Uptown Commc'ns & Elec., Inc.*, No. 20-CV-3303 (LDH) (CLP), 2022 WL 2467471, at *3 (E.D.N.Y. Apr. 12, 2022). Accordingly, courts in this circuit generally use "the *Blair* standard to defer to an arbitrator's award, . . . and confirm the award so long as the arbitrator provided a barely colorable justification for the outcome reached." *Id.* (quotation marks and citations omitted).

Phrased another way, the "'review of arbitration awards is very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)), *cert. denied*, 142 S. Ct. 2889 (2022). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). The Supreme Court has also observed that "courts play only a

---

[7] In the labor context, "Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Loc. 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "'The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)), *cert. denied*, 142 S. Ct. 2889 (2022).

limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

This deference supports the federal policy of respecting parties' contractual agreements, particularly in the context of labor unions. "'The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.'" *Id.* (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Id.* (quoting *United Steelworkers*, 363 U.S. at 597). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).

Even in the context of an unopposed motion to confirm such an award, however, the Court must still determine whether Petitioner has demonstrated that there are no material issues of fact in dispute, because "even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *D.H. Blair & Co.*, 462 F.3d at 110 (quotation marks omitted).

### B. Attorney's Fees and Costs

Under ERISA, "[i]n any action . . . in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Here, the CBA also provides that Petitioner is entitled to attorney's fees and costs. (Pet., ECF No. 1, ¶ 43.) "As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (quoting *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc.*, 688 F.2d 997, 999 (5th Cir. 1982)); *see also First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Loc. 338*, 118 F.3d 892, 898 (2d Cir. 1997) ("In actions for the confirmation and enforcement of arbitral awards, a court may award attorneys' fees if the party challenging the award has 'refuse[d] to abide by an arbitrator's decision without justification.'") (quoting *Int'l Chem. Workers Union, Local 227*, 774 F.2d at 47).

## II. Analysis

### A. Confirmation of the Arbitration Award

Here, notwithstanding proper service of the Petition and the motion, Respondent has not appeared. The Court concludes that, in the absence of any opposition, Petitioner

has established that there are no material facts in dispute.[8] In addition, based on the evidence presented at the arbitration, the record shows that the arbitrator had a reasonable basis for his conclusion that Respondent failed to remit contributions to the Plans during the specified time periods. (*See* Award, ECF No. 1-9.) The record also amply establishes that the arbitrator acted within the scope of his authority and that he had an adequate basis for the Award. (*See* Award, ECF No. 1-9.) Specifically, based on the CBA and the exhibits presented, including a summary of payments and delinquencies, the arbitrator ordered Respondent to pay: (1) JIB Contributions of $109,965.29; (2) interest thereon of $6,175.45; (3) DSP contributions of $30,028.86; (4) interest thereon of $3,330.26; (5) additional interest of $3,044.49; (6) liquidated

---

[8] In addition to evaluating whether the arbitrator has a basis for the Award, the Court notes that Petitioner has demonstrated proper service on Respondent in this case, as well as compliance with the procedures required under the CBA. (Pet., ECF No. 1, ¶ 34; *see* Aff. of Service, ECF No. 18-3.) Specifically, Petitioner commenced arbitration in accordance with the CBA, leading to an arbitration award for Petitioner, and now Petitioner seeks to confirm that award, as provided for under the CBA. (Pet., ECF No. 1, ¶¶ 42–51.) The record establishes that Respondent agreed to be bound by the CBA, the Collection Policy, and the Arbitration Procedures. (CBA, ECF No. 1-2.) The evidence submitted at arbitration showed that Petitioner complied with the required procedures under the CBA and that notice to Respondent was provided. (Pet., ECF No. 1, ¶ 33; Statement of Claims, ECF No. 1-6; Pre-Hearing Mem. of Law, ECF No. 1-7.)

Petitioner also established compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. The Court finds that Petitioner's motion papers comport with these rules. Specifically, Petitioner (1) requested a certificate of default in accordance with Local Rule 55.1(a), (*see* Request for Cert. of Default, ECF No. 12); (2) demonstrated that Defendants have failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b), (*see* Aff. of Service, ECF No. 10; Grancio Decl., ECF No. 18, ¶¶ 7–11); and (3) certified the mailing of the motion papers to Respondent KS&SS Associates, Inc. at their last known address, in accordance with Local Rule 55.2(c), (*see* Cert. of Service, ECF No. 10).

damages of $27,988.83; [and] (7) legal, administrative and arbitration fees of $2,250.00,"[9] which amounts total $182,783.18. (Pet., ECF No. 1, ¶¶ 36–37; *see* Award, ECF No. 1-9; Suppl. Letter, ECF No. 25, at 1–2.) The record shows the arbitrator awarded these amounts in accordance with the CBA, Collection Policy, and the Arbitration Procedures. Accordingly, the Award should be confirmed.[10] (*See* Award, ECF No. 1-9.)

Given that an arbitration award should be confirmed if there exists "'even a barely colorable justification for the outcome reached,'" the Court "must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir. 1978)); *see also March Rich & Co., A.G.*, 579 F.2d at 704.

### B. Prejudgment Interest

Although a discretionary award, "there is 'a presumption in favor of prejudgment interest'" in this Circuit, "particularly where the agreement between the

---

[9] As noted above, Petitioner is entitled to attorney's fees under both the CBA and ERISA. (Pet., ECF No. 1, ¶ 43; CBA, ECF No. 1-2; Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2)(D).) At the arbitration, the arbitrator awarded Petitioner $2,250 in "attorney's fees, arbitration fees and costs incurred in [that] matter," noting in a footnote that "[the] amount includes [a] fee of one thousand four hundred dollars ($1,400.00) charged for drafting this Opinion and Award." (Award, ECF No. 1-9, at 5 n.5.) The record thus demonstrates that the total amount awarded ($2,250) comprised Petitioner's fees and costs related to the arbitration, including $1,400 for drafting the arbitration opinion and Award. The arbitrator had a sound basis for the award of fees and costs. (*See* Mem. of Law in Supp. of Arb., ECF No. 17-7, ¶ 67; Contributions Owed, ECF No. 17-8, at ECF p. 3.)

[10] Not only was the Award justified by the CBA and plan documents, ERISA directs courts to award (1) "the unpaid contributions," (2) "interest on the unpaid contributions," and (3) "an amount equal to the greater of — (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of [the unpaid contributions]." 29 U.S.C. § 1132(g)(2). When interest accrues during the pendency of an action and is explicitly requested, such interest shall be awarded. *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005) ("In general, a district court has discretion to award ERISA damages that accrue during the pendency of an action.").

parties states that an arbitration decision is final and binding." *Finkel v. Pomalee Elec. Co., Inc.*, No. 16-CV-4200 (DRH) (AKT), 2018 WL 1320689, at *12 (E.D.N.Y. Feb. 22, 2018) (citation and second quotation marks omitted) ("*Pomalee*") (quoting *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984)), *report and recommendation adopted*, 2018 WL 1318997 (E.D.N.Y. Mar. 14, 2018). Here, the Court notes that the Arbitration Procedures agreed to by the parties state that all awards "shall be final and binding." (Arb. Proc., ECF No. 1-5, § IX.B; *see also* CBA, ECF No. 1-2, Art. I § 2(e).) The Court therefore finds that an award of prejudgment interest is appropriate.

Here, an amendment to the Collection Policy states that "[i]nterest on delinquent contributions will be charged at 8% . . . except that interest charged on delinquent NEBF contributions is governed by the NEBF Trust, and such interest is currently charged at 10%." (Collection Policy, ECF No. 1-4, at ECF p. 8, ¶ 4; *see also* DeLuca Decl., ECF No. 17, ¶ 25.) Plaintiff accordingly uses the following formula to calculate prejudgment interest with respect to the unpaid contributions owed, per day for delinquent contributions:

$$(\text{principal amount of unpaid contributions}) \times (\text{applicable interest rate})/365$$

*See Finkel v. G Energy Sol. & Servs., Inc.*, No. 22-CV-4276 (HG) (TAM), 2023 WL 2185151, at *1–2 (E.D.N.Y. Jan. 13, 2023), *report and recommendation adopted*, Feb. 3, 2023 ECF Order Adopting R. & R. Here, the delinquent NEBF contributions total $4,068.51, meaning that the total amount of unpaid non-NEBF contributions is $105,896.78 ($109,965.29 - $4,068.51 = $105,896.78). (*See* DeLuca Decl., ECF No. 17, ¶ 34.) Based on the rates set forth in the Collection Policy, the Court recommends an award of

prejudgment interest using the above formula, adjusted with the appropriate interest rate. *See Pomalee*, 2018 WL 1320689, at *12 (using the JIB's collection policy to provide the relevant interest rate). Prejudgment interest should therefore be awarded at a rate of $24.32 per day. ($105,896.78 × .08 / 365 = $23.21; $4,068.51 × .10 / 365 = $1.11; $23.21 + $1.11 = $24.32.)

Based on the foregoing, the Court respectfully recommends awarding prejudgment interest on the unpaid contributions — as found by the arbitrator — from the date of the Award until the date of judgment, at the rates set forth in the Collection Policy. Prejudgment interest should therefore be calculated from March 14, 2023, the date of the award, through the date the Clerk of Court enters final judgment, at a per diem rate of $24.32. (*See* Award, ECF No. 1-9, at 5, 6.)

### C.  Attorney's Fees and Costs

In evaluating an application for attorney's fees, "the district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the 'lodestar' — what we think is more aptly termed the 'presumptively reasonable fee.'" *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). The presumptively reasonable fee is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). Here, Petitioner seeks a fee award of $9,255 for 31.1 hours of legal work. (Suppl. Letter, ECF No. 25.) Petitioner also seeks $641.04 in costs. (*Id*. at 1.)

"In the Eastern District of New York, typical hourly fees in the ERISA context are $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals." *Maddaloni*

*v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*, No. 19-CV-3146 (RPK) (ST), 2023 WL 6457756, at *2 (E.D.N.Y. Oct. 4, 2023) (quotation marks omitted); *see Ferrara v. Happy Time Trucking LLC*, No. 17-CV-7450 (GRB) (AKT), 2020 WL 13159036, at *9 (E.D.N.Y. Oct. 28, 2020) (granting $400 hourly rate to partners), *report and recommendation adopted*, Nov. 19, 2020 ECF Order Adopting R. & R.; *Trs. of United Union of Roofers, Waterproofers & Allied Workers Loc. Union No. 8 Benefit Funds v. K & M Gen. Contracting Inc.*, No. 22-CV-6853 (DLI) (RML), 2023 WL 5979179, at *4 (E.D.N.Y. July 27, 2023) ("In this district, the prevailing hourly rates are generally $200 to $450 for partners in law firms, $200 to $325 for senior associates, [and] $100 to $200 for junior associates[.]" (alterations in original) (quotation marks omitted)), *report and recommendation adopted*, Aug. 1, 2023 ECF Order Adopting R. & R.

As to reasonableness of hours worked, courts in this district have found that "the number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or otherwise unnecessary." *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Local 1010 Apprenticeship, Skill Improvement, & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834 (FB) (SJB), 2022 WL 584536, at *9 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022) (quotation marks omitted).

In support of the request for attorney's fees related to this Petition, counsel has submitted invoices documenting the specific tasks performed, the hours worked, and the hourly rates for attorneys and support staff. (Hist. Bill, ECF No. 18-5; Updated Hist. Bill, ECF No. 22-3.) The requested fee is based on a billing rate of $410 per hour for partners, $310 per hour for law clerks, and $155 per hour for legal assistants. (Pet., ECF No. 1, ¶¶ 45–47.) As noted above, Petitioner requests an award of $9,255 for 31.1 hours

15

of legal work related to drafting, finalizing, and filing the petition.[11] (Suppl. Letter, ECF No. 25.) Petitioner also seeks $641.04 in court fees and charges related to service of the Petition. (Suppl. Grancio Decl., ECF No. 22, at 3; Suppl. Letter, ECF No. 25, at 1–2.)

Having reviewed the billing records, the Court finds that the requested hourly rates and costs are reasonable. *See Maddaloni*, 2023 WL 6457756, at *2 (awarding $420 per hour for partners and of counsel); *Finkel v. JCF Elec., Inc.*, No. 21-CV-3161 (CBA) (RER), 2022 WL 3682834, at *4 (E.D.N.Y. Aug. 25, 2022) (awarding costs of $475).

Here, the Court finds that the number of hours billed is somewhat unreasonable. Petitioner cites various cases in support of the proposition that 31.1 hours "is a reasonable amount of time to spend on prosecuting an ERISA default action." (Suppl. Letter, ECF No. 25, at 2.) But the ERISA default cases Petitioner relies on are not procedurally analogous to the case at bar because they are not based on petitions to confirm arbitration awards. *See, e.g., PCM Contracting Corp.*, 2022 WL 584536, at *10 (finding 39.4 hours reasonable); *Trs. of the Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Savings Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *6 (E.D.N.Y. Jan. 13, 2020), *report and recommendation adopted sub nom. Trs. of Plumbers Loc. Union No. 1 Welfare Fund v. Temperini Mech. Inc.*, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020) (finding 68.58 hours reasonable for, among other things, "drafting the complaint, drafting the amended complaint, revising the motion for default, [and] conferences");

---

[11] While the Petition states that Petitioner seeks an award of $10,345 for 35.5 hours of work (Updated Hist. Bill, ECF No. 22-3, at 5), the Court relies on the Supplemental Letter, in which Petitioner clarifies that they seek an award of $9,255 for 31.1 hours of work (Suppl. Letter, ECF No. 25, at 1–2).

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ges Bake Shop, Inc.*, No. 13-CV-728 (FB) (CLP), 2014 WL 1159821, at *10–11 (E.D.N.Y. Mar. 21, 2014) (finding 31.2 hours reasonable for drafting the complaint and default motion).

Comparatively, in two procedurally analogous matters involving petitions to confirm arbitration awards, Petitioner was recently awarded far less, after filing a letter requesting that the Court deem the petition as an unopposed motion for summary judgment in lieu of filing motions for default judgment. *See Finkel v. Thorn Elec., Inc.*, No. 22-CV-93 (EK) (TAM), 2022 WL 18135310, at *6 (E.D.N.Y. Dec. 2, 2022) (awarding $210 in fees for 0.6 hours of legal work), *report and recommendation adopted*, 2023 WL 112802 (E.D.N.Y. Jan. 5, 2023); *Finkel v. G Energy Sol. & Servs., Inc.*, No. 22-CV-4276 (HG) (TAM), 2022 WL 18859025, at *6 (E.D.N.Y. Dec. 19, 2022) (awarding $400 in fees for 1.6 hours of legal work), *report and recommendation adopted*, Jan. 10, 2023 ECF Order Adopting R. & R, *supplemented* 2023 WL 2185151 (E.D.N.Y. Jan. 13, 2023), *report and recommendation adopted*, Feb. 3, 2023 ECF Order Adopting R. & R.

Here, in a similarly simple matter, rather than taking that streamlined approach, the attorneys engaged in a substantial number of hours of arguably unnecessary work, spending 25 hours related to drafting the default motion alone. (*See* Updated Hist. Bill, ECF No. 22-3, at 2–5.) In comparison, in a complex matter involving "multiple corporate entities in more than one state," Petitioner spent "24.5 hours related to the drafting of the motion for default judgment." *Finkel v. Gaffney-Kroese Elec. Supply Corp.*, No. 22-CV-1777 (DG) (TAM), 2023 WL 2579165, at *13 (E.D.N.Y. Feb. 22, 2023), *report and recommendation adopted*, Mar. 10, 2023 ECF Order Adopting R. & R. Moreover, in a matter "requiring plaintiffs' counsel to review extensive records and prepare a number of detailed declarations," the court awarded a *total* of 22.9 hours, representing the

17

drafting of both the complaint and motion for default judgment. *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC*, No. 21-CV-2518 (CBA) (JRC), 2022 WL 4642735, at *11 (E.D.N.Y. Sept. 15, 2022), *report and recommendation adopted*, 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022), *supplemented* 2022 WL 11727626 (E.D.N.Y. Oct. 20, 2022).

Considering the procedural posture of a default motion on a petition to confirm an arbitration award, the Court concludes that 25 hours of work on the default motion alone is excessive. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). Indeed, of those 25 hours, 16 hours were billed by associates at a rate of $310, despite the fact that some of this work was administrative in nature. (*See* Updated Hist. Bill, ECF No. 22-3, at 2–4 (billing 2.6 hours for, in part, "conform[ing] exhibits to judge's rules"; billing 0.8 hours for "draft[ing] [table of contents] and [table of authority], [and] review[ing] citations"; and billing 1 hour for "sav[ing] executed DeLuca Decl, Updat[ing] [memorandum of law] based on DeLuca edits, [and] updat[ing] [table of authority and table of contents]").) *See Gesualdi*, 2019 WL 5693803, at *8; *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401 (CS), 2020 WL 7239678, at *4 (S.D.N.Y. Dec. 9, 2020) (explaining that "attorneys engaged in clerical tasks should be compensated at the rate for clerical employees" (quotation marks omitted)).

In addition, the Court finds the billing records to be unclear and vague because the description for a single entry often included numerous tasks.[12] *See Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (Fee applicants "should exercise 'billing judgment' with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."). Indeed, courts routinely apply across-the-board reductions on this basis alone, sometimes "imposing reductions as high as 40% based solely on vague billing entries." *Reiter v. Maxi-Aids, Inc.*, No. 14-CV-3712 (SJF) (GRB), 2019 WL 1641306, at *5 (E.D.N.Y. Apr. 16, 2019) (quotation marks omitted).

Based on the above considerations, the Court recommends applying an across-the-board reduction of 25% to the 16 hours associates billed toward the default motion to better calculate the number of hours that would be reasonable here. *See Gesualdi*, 2019 WL 5693803, at *8 (recommending a 20% reduction of hours because the court questioned the efficiency of the work given the simplicity of the matter). Accordingly, the Court concludes that awarding Petitioner $7,985 in attorneys' fees for 27.1 hours of

---

[12] For instance, on June 1, 2023, a legal assistant billed 1 hour for "attn to AG email, emailed process server re invoice, saved invoice to file and coordinated payment of same, pulled history bill, updated AG declaration and emailed AG re question, updated MOL and table of contents and authorities, updated notice of motion and proposed judgment, attn to exhibits re redaction." (Updated Hist. Bill, ECF No. 22-3, at 4.) This practice, sometimes referred to as "block billing," impacts the Court's "ability to assess reasonableness" and often results in a percentage reduction as a result. *Reiter v. Maxi-Aids, Inc.*, No. 14-CV-3712 (SJF) (GRB), 2019 WL 1641306, at *5 (E.D.N.Y. Apr. 16, 2019) (collecting cases).

work is reasonable.[13] Petitioner's request for $641.04 in costs is properly documented and reflects reasonable costs; it should be awarded in full.[14]

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the Petition to confirm the arbitration award be granted and that judgment be entered in Petitioner's favor. Specifically, the Court recommends (1) confirming the arbitration award; (2) awarding judgment in favor of Petitioner in the amount of $182,783.18 consisting of (a) JIB Contributions of $109,965.29; (b) interest thereon of $6,175.45; (c) DSP contributions of $30,028.86; (d) interest thereon of $3,330.26; (e) additional interest of $3,044.49; (f) liquidated damages of $27,988.83; and (g) legal, administrative and arbitration fees of $2,250.00; and (3) awarding $8,626.04 in attorneys' fees and costs. The Court also respectfully recommends awarding prejudgment interest from March 14, 2023, through the date the Clerk of Court enters final judgment, at a per diem rate of $24.32, for the reasons set forth above.

\* \* \* \* \*

This Report and Recommendation will be filed electronically, and a copy sent by mail to KS&SS Associates, Inc. Objections to this report and recommendation must be

---

[13] The Court arrived at the conclusion that $7,985 in attorneys' fees is reasonable based on the following calculations. A 25% reduction of the 16 hours associates billed toward the default motion is 12 hours. Billed at an hourly rate of $310, a four-hour reduction of associate hours results in a $1,240 deduction (4 x $310 = $1,240). Therefore, the Court finds $7,985 for 27.1 hours of work to be more reasonable given the lack of complexity and questionable necessity of the motion ($9,225 − $1,240 = $7,985; 31.1 − 4 = 27.1).

[14] The $641.04 in costs consists of: (1) $402 for the filing fee; (2) $0.84 for postage; (3) $16.55 for a "Lexus Nexus" Invoice; (4) $0.60 for postage; (5) $175 for a service fee; (6) $2.07 for Lexis Nexis; (7) $8.18 for Lexis Nexis; (8) $1.67 for Lexis Nexis; (9) $23.13 for Lexis Nexis; (10) $1.65 for Lexis Nexis; and (11) $9.35 for postage. (Updated Hist. Bill, ECF No. 22-3, at 5.)

filed, with a courtesy copy sent to the Honorable Hector Gonzalez at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

      **SO ORDERED.**

Dated:  Brooklyn, New York
      January 29, 2024

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE